UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

HYMIDE LEURBOUR, Petitioner,

v. Civil Action No. 4:26-cv-698-RGJ

JASON WOOSLEY, et al., Respondents.

****

# MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Petition for Writ of Habeas Corpus [DE 1] filed by Petitioner Hymide Leurbour ("Petitioner"). The United States as counsel for the Federal Respondents ("Respondents")[1] responded [DE 9], and Petitioner replied [DE 10]. The parties have also jointly moved [DE 6] to cancel the Show Cause Hearing scheduled for November 17, 2026. These matters are ripe. For the reasons below, Petitioner's Petition for Writ of Habeas Corpus [DE 1] is **GRANTED** and the parties' joint motion to cancel the hearing [DE 6] is **GRANTED**.

## I. BACKGROUND

Petitioner is a native and citizen of Haiti. [DE 1 at 1]. Petitioner entered the United States at the Hidalgo, Texas port of entry on or about February 15, 2024. [*Id.*; DE 9 at 50]. Petitioner was issued a Notice to Appear [DE 9-2] and paroled. [DE 1 at 1; DE 9 at 50]. Petitioner's parole expired February 13, 2025. [DE 1 at 1; DE 9 at 50].

On October 16, 2026, an officer from the Cadiz Police Department initiated a traffic stop of Petitioner. [DE 9 at 50]. The officer contacted Immigration and Customs Enforcement ("ICE"), which issued an administrative warrant for Petitioner's arrest [DE 9-4 at 68]. [DE 1 at 10; DE 9 at

[1] 28 U.S.C. § 517 allows the Office of the United States Attorney to make appearances in court to attend to the United States' interests. Respondents submitted responses in this case to attend "to the United States' interests to the extent that the petition also names a county official as a respondent." [DE 9 at 49 n.1].

50]. Petitioner is currently detained at the Grayson County Detention Center in Leitchfield, Kentucky. [DE 1 at 10].

Petitioner filed this petition on November 4, 2026, requesting "immediate release" or, "[i]n the alternative, . . . a . . . bond hearing[.]" [DE 1 at 3]. The Court scheduled a Show Cause Hearing for November 17, 2026. [DE 5]. The parties alerted to the Court that they are not aware of any relevant factual disputes and move to cancel the hearing. [DE 6 at 43]. Accordingly, the parties' joint motion to cancel the hearing [DE 6] is **GRANTED**.

## II. DISCUSSION

Petitioner asserts that her continued detention is unlawful and violates due process and statutory rights under the Immigration and Nationality Act (INA) because she is properly detained, if at all, under Section 236 of the INA, codified at 8 U.S.C. § 1226(a). [DE 1 at 10-12]. Section 1226(a) provides that noncitizens in removal proceedings may be detained but are eligible for release on bond. *See* 8 U.S.C. § 1226(a).

Respondents assert that the Court should deny Petitioner's Petition because she is properly detained under 8 U.S.C. § 1225(b)(2), which authorizes mandatory detention. [DE 9 at 50] *See* 8 U.S.C. § 1225(b)(2)(A).

### A. Petitioner is detained under Section 1226(a), not Section 1225(b)(2)

There is no dispute that Petitioner was lawfully paroled into the United States or that Petitioner's parole has since expired. The question is which detention statute properly applies to Petitioner, who has resided within the United States since 2024. If § 1226(a) applies, then Petitioner was entitled to an individualized custody redetermination hearing, at which time the immigration judge was required to evaluate whether there is a risk of flight or danger to the community. *See* 8 C.F.R. § 1236.1(c)(8), (d)(1)).

In *Lopez-Campos v. Raycraft*, the Sixth Circuit held that mandatory detention of certain noncitizens "already present in the United States" who were not "seeking admission" was unlawful, and that the petitioners were properly detained, if at all, under § 1226(a). *Lopez-Campos v. Raycraft*, 175 F.4th 713, 732 (6th Cir. 2026) (explaining "§ 1226 applies to aliens already present in the United States" and "creates a default rule for those aliens . . . .").

Nevertheless, Respondents contend that *Lopez-Campos* is inapplicable because that "case dealt with individuals who did not apply for admission and who were not granted parole under 8 U.S.C. § 1182(d)(5), unlike Petitioner." [DE 9 at 50]. Instead, Respondents contend, "upon expiration of her parole, [Petitioner] reverted back to her prior immigration status of arriving alien." [DE 9 at 51]. Accordingly, she remains an "arriving alien" and "applicant for admission subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A)." [DE 9 at 55].

Respondents' argument rests on a legal concept known as the "entry fiction" doctrine. As the Sixth Circuit has explained, "[t]his paradox of paroling aliens into the United States yet refusing to recognize their 'entry' into the United States has been termed the 'entry fiction' by some courts." *Rosales–Garcia v. Holland*, 322 F.3d 386, 391 n.2 (6th Cir. 2003). The doctrine stems from the notion that "an alien on the threshold of initial entry stands on a different footing: 'Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.'" *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953). In *Mezei*, the Supreme Court created an "entry fiction," which extended this distinction to some individuals in the interior of the United States but who, as a result of their status, are deemed technically on the threshold of entry.

The entry fiction doctrine is further reflected in the relevant federal regulation. Regulation defines an "arriving alien" as:

> [A]n applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport. *An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act* [codified at 8 U.S.C. § 1182(d)(5)(A)], *and even after any such parole is terminated or revoked.*

8 C.F.R. 1001(q) (emphasis added). Indeed, as Respondents note, the Sixth Circuit has stated in dicta that "an arriving alien remains an arriving alien even if paroled . . . and even after any such parole is terminated or revoked." *Rais v. Holder*, 768 F.3d 453, 456 n.4 (6th Cir. 2014) (citing 8 C.F.R. § 1001.1(q)). Moreover, "[w]hen a Section 1182 humanitarian parole terminates, 'the alien shall forthwith return or be returned to the custody from which he was paroled[,] and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.'" *Daza v. Albarran*, No. 25-cv-10214-RFL, 2026 WL 81518, at *3 (N.D. Cal. Jan. 12, 2026) (quoting 8 U.S.C. § 1182(d)(5)(A)). *Cf. Martinez v. U.S. Atty. Gen.*, 577 F. App'x 969, 973 (11th Cir. 2014) (citing 8 C.F.R. § 212.5(e)) ("When parole is terminated, the paroled alien is restored to the status that he or she had at the time of parole and becomes subject to removal proceedings.").

Respondents therefore conclude, on termination of Petitioner's parole, all the circumstances which require applying § 1225(b)(2) were necessarily met: Petitioner was restored to (1) an "applicant for admission"; (2) "seeking admission"; and (3) "not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2).

Yet courts in the Sixth Circuit are divided on whether, on expiration of their parole, noncitizens like Petitioner who are present in the interior of the country are subject to mandatory detention under § 1225(b)(2). *Compare Chirinos Chirinos v. Tindell*, No. 3:25-CV-789-CHB, 2026 WL 926941, at *11 (W.D. Ky. Apr. 6, 2026) (finding section 1225(b)(2) applies because

"upon the termination or expiration of an alien's parole, that alien is returned to the status they held at the time of their parole, that is, the status under which they were subject to the 'immediate charge and control' of DHS"), *Gonzalez Crispin v. Olson*, No. 4:26-CV-308-CHB, 2026 WL 1430506, at *4 (W.D. Ky. May 21, 2026) (accord), *Jean v. Bullock*, No. 2:26-cv-02571-BCL-ATC, 2026 WL 1531056, at *3 (W.D. Tenn. May 30, 2026) (Petitioner thus falls without *Lopez-Campos*'s definition of Section 1226(a) and within Section 1225(a)(1)'s definition of 'applicants for admission' subject to mandatory detention under Section 1225(b)(2)(A)"), *with Ontiveros v. Warden Corr. Ctr. of Nw. Ohio*, No. 3:26-CV-632, 2026 WL 1109422, at *5 (N.D. Ohio Apr. 24, 2026) ("Respectfully, this Court must disagree with *Chirinos*. *Chirinos* incorrectly conflates a return to 'custody' with a return to prior 'status.'"), *Quintero v. Olson*, No. 4:26-CV-34-DJH, 2026 WL 596643, at *3 (W.D. Ky. Mar. 3, 2026) (finding petitioner was "detained under § 1226(a), not § 1225(b)(2), and is thus entitled to a bond hearing"), *Ismoilov v. Maydak*, No. CV 26-185-DLB, 2026 WL 1587994, at *3 (E.D. Ky. June 3, 2026) (finding Sixth Circuit's reasoning in *Lopez-Campos* applied to petitioner who had been present in the interior for more than three years and whose parole had expired).

The same split has been recognized by district courts in our sister circuits across the country. *See*, *e.g.*, *Sananes Hernandez v. Leyva*, No. 4:26-CV-00054-DN, 2026 WL 1948965, at *5 (D. Utah July 6, 2026) ("Recent litigation has highlighted a dispute regarding DHS's authority to re-detain parolees under 8 U.S.C. § 1225(b)(2) following the termination or expiration of their parole."); *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 309 (E.D.N.Y. 2025) ("Although Rodriguez-Acurio is an applicant for admission, she clearly is not presenting herself at the border and was not recently apprehended just after entering, and thereby is not 'seeking admission' under Section 1225(b)(2)."), *appeal dismissed*, No. 26-219, 2026 WL 1208948 (2d Cir. Feb. 25, 2026);

*Qasemi v. Francis*, No. 25-CV-10029 (LJL), 2025 WL 3654098, at *11 (S.D.N.Y. Dec. 17, 2025) (collecting cases holding that "any determination as to [former parolee noncitizen's] detention must be conducted under the discretionary framework of Section 1226(a), which 'governs the process of arresting and detaining noncitizens who have already entered the United States pending their removal'"); *Estebesov v. Olson*, No. 26-CV-1165, 2026 WL 1229622, at *3, n.2 (N.D. Ill. May 5, 2026) (holding "[t]he plain language of the relevant statute provides that upon termination of his parole, Petitioner was subject to mandatory detention under § 1225(b)" and noting that "the Fifth and Eighth Circuits adopted this minority view").

The Court is unpersuaded by Respondents' arguments distinguishing *Lopez-Campos*. Indeed, the plain language of the parole statute suggests that Petitioner is on equal footing with the petitioners in *Lopez-Campos*. The parole statute provides that, upon termination of parole, a petitioner's "case shall continue to be dealt with *in the same manner as that of any other applicant for admission* to the United States." 8 U.S.C. § 1182(d)(5)(A) (emphasis added). And the process for detaining other applicants for admission within the United States is clear: "Section 1226 generally governs the process of arresting and detaining aliens once inside the United States." *Chavez v. Dir. of Detroit Field Off.*, No. 4:25-cv-02061-SL, 2025 WL 2959617, at *4 (N.D. Ohio Oct. 20, 2025) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018)). *See Lopez-Campos*, 175 F.4th at 722 ("Put differently, § 1225(b)(2)'s mandatory detention scheme applies to certain noncitizens who seek admission into the country, whereas § 1226's permissive detention scheme applies to all other noncitizens pending a decision on their removability, with exceptions.").

True, Petitioner's status as a former parolee arguably means that she indefinitely continues to be "an arriving alien." *See* 8 C.F.R. 1001(q). But just as an "'applicant for admission' is not necessarily 'seeking admission,'" *Lopez-Campos*, 175 F.4th at 732, neither is an "arriving alien."

In any event, as the district court in *Jean v. Bullock* explained, *Lopez-Campos* stands for the proposition that "the entry fiction 'does not control' when an alien has 'resided within the United States for years.'" 2026 WL 1531056, at *3. *See also Ontiveros*, 2026 WL 1109422, at *4 (finding regulatory definition of "arriving alien" unpersuasive); *Coal. For Human Immigrant Rights v. Noem*, 805 F. Supp. 3d 48, 85 (D.D.C. Aug. 1, 2025) ("[S]ection 1182(d)(5)(A) does not, as Defendants insist, say that parolees return, upon the termination or expiration of their parole, to 'the position of an applicant for admission standing at the threshold of entry."), vacated on other grounds, 185 F.4th1275 (D.C. Cir. 2026); *Walizada v. Trump*, No. 2:25-cv-768, 2025 WL 3551972, at * 15 (D. Vt. Dec. 11, 2025) (finding it "absurd" "unjust" and "counterintuitive" that the idea that the expiration of a petitioner's parole would place him in the "perpetual status as an 'arriving alien'").

Here, while Petitioner entered the United States and was almost immediately detained, she was released, issued a Notice to Appear, put in regular removal proceedings, and was paroled for a limited time into the country. [*See* DE 1 at 1; DE 9 at 50; DE 9-1 at 58 ("Subject was processed for [a Notice to Appear] and paroled into the U.S. pending [Section] 240 hearings.")]. That parole expired on February 13, 2025, after which Petitioner remained in the United States. [DE 1 at 1; DE 9 at 50]. Petitioner was then arrested "pursuant to sections 236" of the INA, codified at 8 U.S.C. § 1226(a). [DE 9-4 at 68]. In sum, both Respondents' documents and the fact that Petitioner remained in the United States after her parole was terminated demonstrate that she, just like petitioners in *Lopez-Campos*, is not "seeking admission." 8 U.S.C. § 1225(b)(2). *See* 175 F.4th at 723 ("[F]or a noncitizen to be 'seeking admission' under § 1225(b)(2)(A), the noncitizen must actively be in search of lawful entry into the United States via inspection and authorization by an immigration officer."); *Ismoilov*, 2026 WL 1587994, at *3 (E.D. Ky. June 3, 2026) ("By remaining

in the country undetected after his parole expired, Ismoilov obtained similar status to any other undocumented immigrant who entered the United States without inspection and without DHS having knowledge of their whereabouts.”).

Accordingly, consistent with this Court’s prior opinion in *Guerra v. Mullin*, No. 4:26-CV-430-RGJ, 2026 WL 3027146 (W.D. Ky. Oct. 8, 2026), the Court holds that § 1226(a), and not § 1225, applies to noncitizens such as Petitioner, who remain in the country after their parole ends. *See Guerra*, 2026 WL 3027146, at *3.

**B. Due Process**

Petitioner asserts that her continued detention without a bond hearing violates (1) the INA; (2) 8 C.F.R. §§ 236.1, 1236.1, and 1003.19; and (3) the Due Process Clause. [DE 1 at 10-14]. The Court turns first to Petitioner’s contention that her continued detention without a bond hearing violates due process under the Fifth Amendment. Because the Court concludes that it does, the Court need not reach Petitioner’s other bases for habeas relief.

Having determined that Petitioner’s detention is governed by § 1226(a), Respondents’ arguments as to the due process required by § 1225(b)(2) are futile. [DE 9 at 54 (“As an arriving alien, Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). . . . Petitioner is not owed any more process than Congress has authorized, so Petitioner has not suffered a deprivation of any procedural due process rights.”) (citing *Dep’t of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 138-40 (2020))]. Like the petitioners in *Lopez-Campos*, Petitioner has “a liberty interest to be free from detention.” *Lopez-Campos*, 175 F.4th at 734. Deprivation of that interest “without bond under § 1226(a) [is] a deprivation of liberty that violates [her] due process rights” and makes her continued detention unlawful. *Id.*

**C. Remedy**

The proper remedy for unlawful executive detention is generally release. *See Orellana v. Noem*, 807 F. Supp. 3d 745, 754 (W.D. Ky. 2025) ("[C]ourts across the country have ordered the release of individuals stemming from ICE's illegal detention."); *Minarcaja Concha v. Lyons*, 818 F. Supp. 3d 367, 390 (E.D.N.Y. 2026) ("Release from detention is the typical remedy for unlawful executive detention.") (cleaned up); *Roble v. Bondi*, 803 F. Supp. 3d 766, 774 (D. Minn. 2025) (ordering petitioner's "release from custody as a remedy for ICE's illegal re-detention"). *See also Thuraissigiam*, 591 U.S. at 107 ("Habeas has traditionally been a means to secure release from unlawful detention.").

Release is not the only remedy, however. Historically, "common-law habeas corpus was, above all, an adaptable remedy," whose "precise application and scope changed depending upon the circumstances." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008). The writ's "most extensive" role at common law was "in cases of pretrial and noncriminal detention, where there had been little or no previous judicial review of the cause for detention." *Id.* at 780. In *Boumediene*, the Supreme Court made clear that "when the judicial power to issue habeas corpus properly is invoked the judicial officer must have adequate authority . . . to formulate and issue appropriate orders for relief, including, if necessary, an order directing the prisoner's release." *Id.* at 787.

The Court concludes that release is necessary because Petitioner is currently being held in mandatory detention and has been for nearly a month. As such, Petitioner's continued dentition, however transitory, is unlawful. Accordingly, the Court will order Petitioner's release. This is in line with the remedies fashioned by other district courts in this circuit. *See*, *e.g.*, *Salinas v. Woosley*, No. 4:25-CV-121-DJH, 2025 WL 3243837, at *5 (W.D. Ky. Nov. 20, 2025) (ordering release and requiring a bond hearing before further re-detention); *Monge-Nunez v. Ladwig*, No. 2:25-CV-03043-TLP-ATC, 2025 WL 3565348, at *7 (W.D. Tenn. Dec. 12, 2025) (ordering release pending

a bond hearing). Moreover, "[i]n recent months, courts across the country have ordered the release of detainees in similar situations" where the government has articulated no legitimate interest in detaining individuals who are neither flight risks nor dangers to the community. *Moctezuma v. Henkey*, No. 1:25-CV-00741-BLW, 2026 WL 18809, at *5 (D. Idaho Jan. 2, 2026) (ordering immediate release and collecting cases across jurisdictions); *Cruz-Reyes v. Bondi*, 5:26-CV-60, 2026 WL 332315, at *13 (S.D. Tex. Feb. 3, 2026) ("[D]ue process concerns weigh heavily in favor of granting immediate release."); *Santiago v. Noem*, No. EP-25-CV-361, 2025 WL 2792588, at *13–14 (W.D. Tex. Oct. 2, 2025) (collecting cases and finding that "immediate release appropriately remedies Respondents' violation of [Petitioner's] due process rights through her continued detention.").

However, the Court will not require Respondents to hold a bond hearing following Petitioner's release. *But cf. Monge-Nunez*, 2025 WL 3565348, at *7. Nevertheless, should Respondents decide to re-detain Petitioner, absent a material change in circumstances, they must provide Petitioner with a bond hearing pursuant to Section 1226(a).

## III. CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Petition for Writ of Habeas Corpus [DE 1] and **ORDERS** the following:

(1) Respondents are directed to release Petitioner immediately because of the unlawful detention in violation of her due process rights; and

(2) the United States must certify compliance with the Court's order by a filing on the docket by **November 13, 2026**.

**IT IS FURTHER ORDERED** that the parties' joint motion [DE 6] to cancel the Show Cause Hearing scheduled for November 17, 2026, is **GRANTED**.

Rebecca Grady Jennings, District Judge
United States District Court

November 12, 2026